**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 96-30216

WILLIAM S. SMITH,

                                        Plaintiff-Appellant,

                    versus

INDEMNITY MARINE ASSURANCE
CO., LTD., ET AL.,

                                        Defendants-Appellees.

PAUL HUNT, ETC.,

                            Third Party Plaintiff-Appellee,

                    versus

GREAT AMERICAN BOAT COMPANY, INC.,

                            Third Party Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-1904)

October 23, 1996

Before JONES and WIENER, Circuit Judges, and FURGESON,[*] District
Judge.

---

[*]  District Judge for the Western District of Texas,
sitting by designation.

PER CURIAM[**]:

Plaintiff-Appellant Williams S. Smith appeals the summary judgment in favor of Defendants-Appellees Indemnity Marine Assurance Co., Ltd., et al. (Collectively, the Insurers), dismissing Smith's action as the putative insured under the Lloyd's of London Hull and Machinery policy originally issued in 1983 to "Great American Boat Company, Inc." That policy had been renewed continually until the only ship covered by the policy, the MV/GREAT AMERICA (the Vessel), was virtually destroyed by fire in 1994 while laid up, as it had been for several years. After conducting our de novo review of the district court's rulings, including the denial of Smith's motion to reconsider, we are satisfied that the summary judgment of dismissal was providently granted and should be affirmed.

I

FACTS AND PROCEEDINGS

The corporation known as Great American Boat Company was formed in 1981. It was owned by Smith and his two sons. The corporation acquired the Vessel and renamed it MV/GREAT AMERICA. The corporation had the Vessel insured under a standard of Lloyd's, London policy which was renewed without interruption and with relatively minor modifications until the fire of February 19, 1994.

---

[**]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

The only new documentation that accompanied the several renewals were so-called cover notes or "cover sheets," commonly referred to as renewal certificates. The summary judgment evidence nevertheless makes clear that the same Lloyd's, London policy had remained in effect continuously since its inception; no new policy was ever physically issued, even when the independent agent or broker for the policy changed from Vessel Coverages, Ltd. to the Hartson Agency, which was owned and principally operated by Smith's close friend, Maurice Hartson.

During the course of the dozen years in which the policy was kept in effect by renewals, "Great American Boat Company" was the designated ship owner on every cover sheet with the exception of the last renewal — the one in effect at the time of the fire — on which the word "Company" was inexplicably omitted. At no time, however, did Smith's name appear on any of the insurance documentation, whether as vessel owner or otherwise; neither was there ever any indication that Great American Boat Company (or Great American Boat) was a proprietorship of Smith or that he was doing business in that name; nor was the party insured ever listed as MV/GREAT AMERICAN. The summary judgment evidence is equally clear that Smith never notified the Insurers or any independent agent or broker that any person, natural or juridical, other than Great American Boat Company was the owner of the Vessel or the insured under the policy.

Crucial to the instant analysis is the fact that Great

American Boat Company filed for protection under Chapter 11 of the Bankruptcy Code in August 1983, and that the Vessel was listed as an asset of the corporate debtor.  Equally central to the case are the undisputed facts that (1) the Vessel was sold at bankruptcy auction in September 1988, (2) the buyer was Smith, (3) neither the debtor corporation, as named insured, nor anyone on its behalf or on behalf of Smith as the purchaser and new owner, ever reported the sale and purchase to the Insurers or to any agents or brokers of the coverage, and (4) the designation of Great American Boat Company as  the named insured on the policy was never changed. Also undisputed is the conclusion that —— despite remaining as the named insured under the policy —— the bankrupt corporation, Great American Boat Company, had no insurable interest in the Vessel at the time of the fire; neither had it had such an interest for over five years prior to the fire.

From the inception, the policy and all renewals were subject to the following provision:

> In the event of any change, voluntary or otherwise, in the ownership or flag of the vessel . . . the policy shall automatically terminate at the time of such change of ownership. . . .  This insurance shall not inure to the benefit of any transferee or charterer of the vessel. . . .

After Smith acquired the Vessel he had it documented (registered) in his name by the U.S. Coast Guard, but neither copies of the documentation nor the fact of its existence were ever conveyed to the Insurers or to any insurance agents or brokers.

4

Renewal premiums were remitted to the Hartson Agency using checks signed by Smith and bearing the initials of the Great American Boat Company, the word "insurance," and Smith's name. This cryptic information, printed on the checks, is vague and ambiguous; it could not have put payees or other recipients on notice that Smith was the owner of the Vessel or that he was doing business in the name of Great American Boat or Great American Boat Company. Moreover, those checks were never forwarded to the Insurers; rather, they were negotiated by the insurance agency, which in turn issued its own drafts for the net amount of the premiums, i.e., gross premiums less commissions, and sent those drafts on to the Insurers. Such drafts were the only form of disbursement ever received in London.

## II

### ANALYSIS

As he did to the district court, Smith has proffered a number of arguments to this court, both in his brief and in oral argument by his able counsel. Without reiterating those arguments just to knock them down, however, it suffices that neither singly nor in combination can they carry the day. They neither establish the existence of a genuine issue of material fact sufficient to defeat summary judgment nor provide a basis in fact or law sufficient to defeat the Insurer's entitlement to rely on the above-quoted automatic termination provision of the policy. Smith must be held to knowledge of the existence of the contents of the policy,

5

including the plain and unambiguous language of the automatic termination provision, which is triggered by any change of ownership. Indeed, Smith has never claimed ignorance of that provision.

The Insurers' repeated renewal of the policy and acceptance of the net premiums funneled to them through Smith's friend Hartson and his agency cannot establish insurance by estoppel, waiver, or any other such theory. Of Smith's diverse theories, we are least impressed with the sophistry embodied in the flawed syllogism that (1) under Louisiana law, a renewed insurance policy is a new policy, (2) the change of ownership took place in 1988, so only the "new" renewal policy then in effect was invalidated by such ownership change [Smith proffered no explanation of just how a policy that is terminated _ipso_ _facto_ upon change of ownership during the policy term could somehow be "renewed" to create a new policy months later], and (3) thus there was no change of ownership to effect a termination of the "new" policy, which was in effect at the time the fire occurred in 1994 (when the name of the insured was shown as "Great American Boat," which, insists Smith, was his "d/b/a"); _ergo_, a new policy was in effect when the fire occurred, so the proceeds are payable to Smith doing business as Great American Boat. The speciousness of that argument is too apparent to justify more than an out-of-hand rejection by this court.

III

CONCLUSION

6

For essentially the same reasons given by the district court for (1) granting the motion for summary judgment of Defendant-Appellee Indemnity Marine Assurance Co., Ltd., et al., to dismiss the action of Plaintiff-Appellant William S. Smith, and (2) denying Smith's motion for reconsideration, the rulings of the district court are, in all respects,

AFFIRMED.